**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DONALD DOYLE, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-05588 |
| MIDWEST TITLE LOANS, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

NOW COMES Donald Doyle ("Plaintiff"), by and through his attorney, James C. Vlahakis, and brings the following civil action against Defendant Midwest Title Loan, Inc. ("Midwest") as follows:

**I.    Parties, Jurisdiction and Venue**

1.    Plaintiff is a citizen of the State of Illinois, permanently resides in this District and is a natural person over 18-years-of-age who is a "person" as the term is defined by 47 U.S.C. §153(39).

2.    Defendant Midwest Title Loans, Inc. ("Defendant") is an Illinois corporation that provides persons with automobile title loans.

3.    Defendant uses the assumed names of "Illinois Auto Sales" and "Loanmax".

4.    Defendant's principle office is located at 3440 Preston Ridge, Rd., Suite 500, Alpharetta, Georgia 30005 and its agent for service of process is CT Corporation, 208 S. LaSalle Street, Chicago, IL, 60604.

5.    Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 and for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et

1

seq. ("ICFA").

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      Subject matter jurisdiction is conferred upon this Court by the TCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

8.      Supplemental jurisdiction exists over Plaintiff's ICFA claims pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois, Plaintiff resides in the Northern District of Illinois, and the events giving rise to the claims occurred within the Northern District of Illinois by virtue of the fact that Plaintiff received unlawful communications on his cellular phone while residing in this District.

**II.     Summary of the TCPA**

10.      The TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" or "artificial or prerecorded voice" without the express consent of the person being called. 47 U.S.C. § 227(b)(1)(A)(iii).

11.      In enacting the TCPA, Congress wrote that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991) (emphasis supplied).

12.      47 CFR 64.1200(a)(1)(iii) provides that "[n]o person or entity may: . . . initiate any telephone call (other than a call . . . made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a paging service, cellular

telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

13.     Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

14.     Section 64.1200(f)(8) states that a written agreement shall:

> (i) . . . include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

15.     The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

**III.    Facts Supporting Cause of Action**

   **A. General Allegations**

16.     Plaintiff obtained a title loan (the "Subject Debt") from Defendant.

17.     Plaintiff's cellular telephone number is (312) 520-2869.

18.     Prior to and during the time-period of the calls identified below, Plaintiff has paid for the cellular service associated with his telephone number.

19.     Plaintiff also personally paid for the cellular telephone that is associated with the above telephone number.

20.     At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, possessor, and operator of his cellular telephone ending in 2869.

21.     To the best of Plaintiff's knowledge, information and belief, he does not recall providing Defendant with consent to call his cellular number.

22.     Plaintiff does not recall providing Defendant with express consent to allow Defendant to call his cellular telephone numbers with an ATDS, and if he did, Defendant's manner of attempting to obtain Plaintiff's consent was not clear and conspicuous.

23.     Alternatively, without conceding any consent Defendant may claim Plaintiff's consent was clear and conspicuous, as detailed below, Plaintiff revoked any consent Defendant may claim that he provided.

24.     In or around October 2018, Defendant began calling Plaintiff's cellular telephone number with an ATDS for the purpose of connecting Plaintiff with a live representative and for the purpose of transmitting pre-recorded messages and text messages.

25.     The phone number that Defendant most often used to contact Plaintiff was (773) 735-5501, but upon information and belief, it may have used other phone numbers to place calls to Plaintiff's cellular telephone.

26.     Because the frequency of the below described text message, pre-recorded messages and telephone calls to Plaintiff's cellular telephone number from (773) 735-5501, it is more plausible that Defendant called Plaintiff with an ATDS rather than placing manually dialed calls from this telephone number.

27.     As described in the below allegations, Defendant plausibly used an ATDS to replicate the above telephone number when it randomly or sequentially dialed Plaintiff's cellular telephone number from a set or subset of stored numbers which were

sequentially dialed from a database of stored numbers.

### B. ATDS Based Telephone Calls

28.     Defendant began calling Plaintiff's cellular telephone number in October 2018, for the purpose of contacting Plaintiff to collect the Subject Debt.

29.     In calls that Plaintiff recalls answering, Plaintiff recalls being greeted by a few seconds of "dead air" followed by a pre-recorded message.

30.      During the calls that he did answer, Plaintiff recalls that there was a two to three second pause between the time Plaintiff said "hello?, hello?" and the time that the pre-recorded message would play.

31.     Before Plaintiff was connected with person who responded to him asking "hello?, hello?", Plaintiff heard what sounded like a busy telemarketing center where he could hear several people talking in the background.

32.     Further, upon information and belief, based on the frequency of the calls that Defendant made to Plaintiff's cellular telephone number, Defendant plausibly used an ATDS to place the telephone calls.

33.     Upon information and belief, based on the frequency of the pre-recorded messages that Defendant played when Plaintiff answered Defendant's calls, Defendant plausibly used an ATDS to call his cellular telephone number to transmit the pre-recorded messages.

34.     Based upon industry practice, and the frequency of the calls made to Plaintiff, Defendant used an ATDS to call more than forty similarly situated persons in the State of Illinois who owed money to Defendant for title loans.

### C. Defendant's Text Messages and Pre-Recoded Messages

35.     Defendant began sending text messages to Plaintiff's cellular telephone

number in October 2018, for the purpose of contacting Plaintiff to collect the Subject Debt.

36.     Plaintiff has reasonable grounds to believe that Defendant used an ATDS to call Plaintiff's cellular telephone for the purpose of transmitted text message and pre-recorded messages to collect the Subject Debt.

37.     Defendant used an ATDS to call Plaintiff's cellular telephone number because Defendant's telephone system delivered standard form/non-personalize text messages.

38.     Further, if a human had dialed Plaintiff's cellular telephone number, a person, rather than a text message would have greeted Plaintiff.

39.     Certain text messages that Defendant sent to Plaintiff's cellular telephone number utilized the following messages:

> **Please contact our office Midwest Title Loans to discuss your account and schedule your payment. 773-735-5501**

40.     Another text message that Defendant sent to Plaintiff's cellular telephone number said:

> **Midwest customer, please contact our office to discuss your account and schedule your payment. Thank you! 773-735-5501**

41.     Defendant also sent the following message to Plaintiff's cellular telephone number:

> **Please contact our office to discuss your account and schedule your payment. Contact us today before 6pm. (773)-735-5501.**

42.     Alternatively, Defendant used the following text message:

> **This is Midwest, Please give the office a call at 773-735-5501 to discuss your account. Thank you.**

43.     Upon information and belief, based on the frequency of the text messages that Defendant sent to Plaintiff's cellular telephone number, Defendant plausibly used

an ATDS to transmit the above and below text messages.

44. The below images depict several of the text messages that Defendant sent, transmitted, placed to Plaintiff's cellular telephone number, by and through an ATDS:







45. On information and belief, the text messages that Defendant sent to Plaintiff's cellular telephone number were not personalized to him by name, nor were the messages individually typed or otherwise composed by a person in a specific attempt to contact Plaintiff.

46. Rather, the text messages that Defendant sent to Plaintiff's cellular telephone number were sent as part of a large scale transmission of text messages ("Mass Text Message Transmissions") to other persons' cellular numbers to collect debts owed by these persons ("Class Members").

47. Based upon the number and frequency of text messages that Plaintiff received from Defendant, Defendant used an ATDS to send the text messages to Plaintiff.

48. Based upon industry practice, and the number and frequency of text messages that Plaintiff received from Defendant, Defendant used an ATDS to send Mass Text Message Transmissions to more than forty similarly situated persons in the State of Illinois who owed money to Defendant for title loans.

### D. Defendant Did Not Stop Texting or Calling Plaintiff After He Told Defendant to Stop Contacting Him

49. In or around November 2018, Defendant called Plaintiff's cellular telephone number and Plaintiff answered the call.

50. During this November 2018 call, Plaintiff spoke with a person who represented that the call was being placed by Defendant.

51. During this November 2018, call, Plaintiff told the person on the other end of the call to stop calling him.

52. Additionally, response to one of Defendant's text messages, Plaintiff texted "STOP" to cause Defendant to stop texting him about the Subject Debt.

53. Despite Plaintiff telling Defendant to stop texting him, Defendant continued to call Plaintiff's cellular telephone number with ATDS based phone calls,

prerecorded messages and text messages.

54. Despite Plaintiff telling Defendant to stop calling him, Defendant continued to call Plaintiff's cellular telephone number with ATDS based phone calls, prerecorded messages and text messages.

55. Despite Plaintiff telling Defendant to stop calling him and texting him, Defendant continued to send prerecorded messages and text messages to Plaintiff's cellular telephone number.

56. Because the above calls, text messages and pre-recorded message shared the above characteristics, it is plausible that Defendant placed its calls to Plaintiff's cellular telephone using an ATDS, which is a form of dialing technology that is commonly used in the debt collection industry to collect defaulted debts.

57. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling and texting multiple times in one day, and on back to back days, with such frequency as can be reasonably expected to harass.

58. Defendant's conduct has severely disrupted Plaintiff's daily life and general well-being.

59. Plaintiff has expended time consulting with his attorneys as a result of Defendant's unconscionable conduct.

60. Defendant's phone harassment campaign and illegal collection activities have also caused Plaintiff actual harm by diminishing his use of his cellular telephone, power and battery consumption, wear and tear caused to his cellular telephone, reduced battery charge life, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

61. Defendant's phone harassment campaign and illegal collection activities have also caused Plaintiff actual harm by causing him to become fearful of aggravated

unsolicited debt collection calls.

62.     Defendant's phone harassment campaign and illegal collection activities have also caused Plaintiff to suffer harassment, emotional distress, anxiety, loss of concentration and time-wasting of daily aspects of life.

63.     Defendant's ATDS based calls, text messages and prerecorded messages also impacted Plaintiff's happiness and enjoyment of life because in answering Defendant's unwanted ATDS based calls, text messages and prerecorded messages, Plaintiff was drawn away from with his wife and children.

64.     Defendant's ATDS based calls, text messages and prerecorded messages also impacted Plaintiff during his work hours.

**VI.     Causes of Action**

**Count I – Individual TCPA Claim For ATDS Dialed Telephone Calls**

65.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

66.     Defendant called Plaintiff's cellular telephone using an automated telephone dialing system without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

67.     Defendant violated the TCPA by placing frequent unwanted automated calls to Plaintiff's cellular telephone from October 2018 through and until February of 2019, using an automated telephone dialing system without his prior express or written consent.

68.     Any prior consent, if any, was revoked by Plaintiff's numerous oral revocations and by Plaintiff texting "STOP" to Defendant's text messages.

69.     As pled above, Plaintiff was harmed by Defendant's collection calls to his cellular telephone.

70.     Defendant's autodialed calls to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

71.     Defendant, through its agents, representatives, vendors, subsidiaries, third party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

72.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500.00 per autodialed call made without his consent.

73.      Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Plaintiff repeatedly told Defendant to stop calling should result up to $1,500 in damages per call pursuant to 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff DONALD DOYLE respectfully requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Awarding Plaintiff damages of at least $500.00 for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c.  Awarding Plaintiff treble damages for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

d.  Enjoining Defendant from contacting Plaintiff; and

e.  Award any other relief as the Honorable Court deems just and proper.

### Count II –TCPA Class Action Based Claims For ATDS Dialed Telephone Calls
### (the "Auto-Dialed Calls Without Consent Class")

74.     Plaintiff incorporates the above paragraphs and the preceding Cause of Action as if fully set forth above.

75.     Consistent with the types of calls received by Plaintiff from Defendant, including the frequency and manner in which the calls were received by Plaintiff, Defendant called at least forty (40) cellular phone subscribers in the State of Illinois with

an ATDS, as defined by the TCPA, for the purpose of collecting on a debt, where the ATDS based calls took place without the consent of the persons called.

76. Plaintiff seeks relief on behalf of all similar situated residents of the State of Illinois who can be defined as follows:

> All residents of the State of Illinois (the "Illinois ATDS Class Members") who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS and Defendant never had the express prior consent of the Illinois ATDS Class Members before or after the calls were placed.

77. Alternatively, Defendant committed the same acts as stated in Paragraph 75 to over a 100 persons in the United States and Plaintiff seeks nationwide relief on behalf of the following:

> All persons in the United States (the "Nationwide ATDS Class Members") who were called on their cellular phones within the last four years by Defendant where Defendant placed the calls using an ATDS and Defendant never had the express prior consent of the Nationwide ATDS Class Members before or after the calls were placed.

78. A defendant in a TCPA action bears the burden of demonstrating consent.

79. It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

80. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to each Class Member for a minimum of $500.00 per violation where Defendant cannot establish consent.

81. On information and belief, and in light of Plaintiff's circumstances, Defendant continued to contact the Class Members through the above described method even after the Class Members told Defendant to stop contacting them.

82. Pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Class Members told Defendant to stop contacting them should result up to $1,500 in damages per violation pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a. Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

b. Award statutory damages to Class Members $500 for each violation; and

c. Enjoin Defendant from future violations of the TCPA.

**Count III – Individual TCPA Claim For Pre-Recorded Messages**

83.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

84.     Defendant called Plaintiff's cellular telephone using an automated telephone dialing system and contacted Plaintiff without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

85.     Defendant violated the TCPA by placing frequent unwanted automated prerecorded messages to Plaintiff's cellular telephone starting in October 2018 and continuing until February of 2019, using an automated telephone dialing system without his prior express or written consent.

86.     Any prior consent, if any, was revoked by Plaintiff's numerous oral revocations and by Plaintiff texting "STOP" to Defendant's text messages.

87.     As pled above, Plaintiff was harmed by Defendant's collection calls to his cellular telephone.

88.     Defendant's pre-recorded messages to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

89.     Defendant, through its agents, representatives, vendors, subsidiaries, third party contractors, and/or employees acting within the scope of their authority

acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

90.    Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500.00 per pre-recorded message.

91.    Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Plaintiff repeatedly told Defendant to stop calling should result up to $1,500 in damages per call pursuant to 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff DONALD DOYLE respectfully requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Awarding Plaintiff damages of at least $500.00 for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c.  Awarding Plaintiff treble damages for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

d.  Enjoining Defendant from contacting Plaintiff; and

e.  Award any other relief as the Honorable Court deems just and proper.

### Count IV –TCPA Class Action Based Claims For Pre-Recoded Messages
### (the "Pre-Recorded Message Class")

92.    Plaintiff incorporates the above paragraphs and the preceding Cause of Action as if fully set forth above.

93.    Consistent with the types of pre-recorded messages received by Plaintiff from Defendant, including the frequency and manner in which the calls were received by Plaintiff, Defendant called at least forty (40) cellular phone subscribers in the State of Illinois for the purpose of collecting on a debt, and in doing so played or left pre-recorded messages to these persons, and played or left the pre-recorded messages without the consent of the persons who heard or received the pre-recorded messages.

94.     Plaintiff seeks relief on behalf of all similar situated residents of the State of Illinois who can be defined as follows:

> All residents of the State of Illinois (the "Illinois Pre-Recorded Message Class Members") who were called on their cellular phones within the last four years by Defendant where played or left pre-recorded messages and Defendant never had the express prior consent of the Illinois Pre-Recorded Message Class Members before or after the calls were placed.

95.     Alternatively, Defendant committed the same acts as stated in Paragraph 93 to over a 100 persons in the United States and Plaintiff seeks nationwide relief on behalf of the following:

> All Persons in the United States (the "Nationwide Pre-Recorded Message Class Members") who were called on their cellular phones within the last four years by Defendant where played or left pre-recorded messages and Defendant never had the express prior consent of the Nationwide Pre-Recorded Message Class Members before or after the calls were placed.

96.     A defendant in a TCPA action bears the burden of demonstrating consent.

97.     It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

98.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to each Class Member for a minimum of $500.00 per violation where Defendant cannot establish consent.

99.      On information and belief, and in light of Plaintiff's circumstances, Defendant continued to contact the Class Members through the above described method even after the Class Members told Defendant to stop contacting them.

100.    Pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Class Members told Defendant to stop contacting them should result up to $1,500 in damages per violation pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

    a. Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

    b. Award statutory damages to Class Members $500 for each violation; and

    c. Enjoin Defendant from future violations of the TCPA.

**Count V – Individual TCPA Claim For ATDS Based Text Messages**

101.    Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

102.    Defendant placed or caused to be placed the non-emergency text messages referenced above to Plaintiff's cellular telephone using an automated telephone dialing system without his prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

103.    Defendant violated the TCPA by placing frequent unwanted automated prerecorded messages and text messages to Plaintiff's cellular telephone from October 2018 and continuing through February 2019, using an automated telephone dialing system without his prior express or written consent.

104.    Any prior consent, if any, was revoked by Plaintiff's numerous oral revocations and by Plaintiff texting "STOP" to Defendant's text messages.

105.    As pled above, Plaintiff was harmed by Defendant's collection calls to his cellular telephone.

106.    Defendant's text messages to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

107.    Defendant, through its agents, representatives, vendors, subsidiaries, third party contractors, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

108.    Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500.00 per non-consensual text message.

109.    Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Plaintiff repeatedly told Defendant to stop calling should result up to $1,500 in damages per call pursuant to 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff DONALD DOYLE respectfully requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Awarding Plaintiff damages of at least $500.00 for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B);

c. Awarding Plaintiff treble damages for each phone call and pre-recorded message pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

d. Enjoining Defendant from contacting Plaintiff; and

e. Award any other relief as the Honorable Court deems just and proper.


**<u>Count VI –TCPA Class Actions For ATDS Based Text Messages</u>**
**(the "Text Message Class")**

110.    Plaintiff incorporates the above paragraphs and the preceding Cause of Action as if fully set forth above.

111.    Consistent with the types of text messages received by Plaintiff from Defendant, including the frequency and manner in which the messages were received by Plaintiff, Defendant sent text messages at least forty (40) cellular phone subscribers in the State of Illinois with an ATDS, as defined by the TCPA, for the purpose of collecting on a debt, and did so without the consent of the persons that were texted.

112.    Alternatively, Plaintiff seeks relief on behalf of all similar situated residents of the State of Illinois who can be defined as follows:

All residents of the State of Illinois (the "Illinois Text Message Class Members") who received text messages on their cellular phones within the last four years by Defendant where sent the text messages using an ATDS and Defendant never had the express prior consent of the Illinois Text Message Class Members before or after the text messages were sent.

113.  Alternatively, Defendant committed the same acts as stated in Paragraph 111 to over a 100 persons in the United States and Plaintiff seeks nationwide relief on behalf of the following:

All persons in the United States (the "Nationwide Text Message Class Members") who received text messages on their cellular phones within the last four years by Defendant where sent the text messages using an ATDS and Defendant never had the express prior consent of the Nationwide Text Message Class Members before or after the text messages were sent.

114.  A defendant in a TCPA action bears the burden of demonstrating consent.

115.  It is Defendant's burden and obligation to exclude from these proposed classes people who consented to the calls and messages in question.

116.  Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to each Class Member for a minimum of $500.00 per violation where Defendant cannot establish consent.

117.   On information and belief, and in light of Plaintiff's circumstances, Defendant continued to contact the Class Members through the above described method even after the Class Members told Defendant to stop contacting them.

118.  Pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA after Class Members told Defendant to stop contacting them should result up to $1,500 in damages per violation pursuant to 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff and similarly situated putative class members are entitled to the following relief:

a.  Declare that the telephone calls placed by Defendant to residents of Illinois violated the TCPA;

b. Award statutory damages to Class Members $500 for each violation; and

c. Enjoin Defendant from future violations of the TCPA.

### Count VII – Individual Claim For Violations of the ICFA

119. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

120. Plaintiff is a "person" as defined by 815 ILCS § 505/1(c).

121. Plaintiff is a "consumer" as defined by 815 ILCS § 505/1(e).

122. Defendant is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

123. Defendant committed an unfair practice by refusing to abide by Plaintiff's request to stop calling him to collect the Subject Debt with ATDS based technology, pre-recorded messages and text messages.

124. When Plaintiff answered a call from Defendant and directly spoke with Defendant's live agents, he reasonably believed that by answering a call and telling the agents to stop calling him, that they would document his do-not-call request and that Defendant would cease calling and texting him.

125. When Plaintiff answered a call from Defendant and heard a pre-recorded message asking him to hold for a live persons, he waited to speak to one of Defendant's live agents, he reasonably believed that by answering a call, holding for a live agent, and telling the agent to stop calling him, that the agent(s) would document his do-not-call request and that Defendant would cease calling and texting him.

126. When Plaintiff received a text-message from Defendant and responded by typing "stop" or similar words, he reasonably believed that by responding "STOP", someone employed or associated with Defendant would document his "STOP" request and that Defendant would cease texting and calling him.

127. On information and belief, Plaintiff recalls a live person acknowledging at

least one of his do-not-call requests.

128. Instead of complying with Plaintiff's reasonable requests, it was Defendant's intent to lure Plaintiff into answering calls and text messages *for the purpose of confirming Plaintiff's identify* and to continue to call or message him to harass him into paying the subject debt with increasing calls, pre-recorded messages and text messages.

129. Defendant's conduct in luring and harassing Plaintiff into answering calls and text messages and then refusing to stop contacting him was immoral, oppressive, unethical, unfair and unscrupulous – and against public policy.

130. As noted above, Defendant placed numerous pre-recorded calls and text messages to Plaintiff's cellular telephone notwithstanding Plaintiff's attempts to cause the calls and messages to stop.

131. Defendant's unfair actions violate public policy and shed light on an industry where business decisions are driven by profit, with complete disregard for consumers, where mundane but unusual issues go unheeded – with the consumer suffering the consequences.

132. Defendant's unfair practice occurred during amid conduct involving trade and/or commerce by and through Defendant's attempts to collect the Subject Debt.

133. Defendant's unfair practice proximately caused injury to him as set forth above because more calls, text message and pre-recoded message resulted after he asked Defendant to stop contacting him.

134. As provided above, Defendant's unfair acts and omissions resulted in severe injury to Plaintiff.

135. An award of punitive damages is appropriate as Defendant's unfair acts and omissions were outrageous, wanton and willful, and showed a conscious disregard

and indifference for the rights of Plaintiff, and consumers generally.

**WHEREFORE**, Plaintiff DONALD DOYLE respectfully requests that this Honorable Court:

a. Find that Defendant's unfair acts and omissions violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

b. Award actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

c. Grant any other relief deemed appropriate and equitable.

### Count VIII – Class Based Violations of the ICFA

136. Plaintiff incorporates the above paragraphs and the preceding Cause of Action as if fully set forth above.

137. Consistent with the manner and number of auto-dialed calls received by Plaintiff from Defendant, Defendant called at least forty (40) cellular phone subscribers in the state of Illinois with an ATDS, as defined by the TCPA by, for the purpose of collecting on a debt, and did so without the consent of the persons called (the "ICFA ATDS Class Members").

138. Consistent with the manner and number of pre-recorded messages received by Plaintiff from Defendant, Defendant called at least forty (40) cellular phone subscribers in the state of Illinois with an ATDS, for the purpose of collecting on a debt, and played or left pre-recorded messages on the cellular phones of the persons who heard or received the pre-recorded messages (the "ICFA Pre-Recorded Class Members").

139. Consistent with the manner and number of Mass Text Message Transmissions received by Plaintiff from Defendant, Defendant called or otherwise transmitted similar Mass Text Message Transmissions to at least forty (40) cellular phone subscribers in the state of Illinois, with an ATDS, as defined by the TCPA by, for the purpose of collecting on a debt, and did so without the consent of the(the "ICFA Text

Message Class Members").

140. Defendant placed the ATDS based calls, pre-recorded messages and Mass Text Message Transmissions for the purpose of causing the ICFA Class Members to answer or otherwise respond the various calls, pre-recorded messages and Mass Text Message Transmissions for the purpose of harassing the ICFA Class Members into paying their debts with ever increasing calls, pre-recorded messages and Mass Text Message Transmissions, rather than complying with do-not-call requests made by the ICFA Class Members.

141. On information and belief, and in light of Plaintiff's circumstances, Defendant continued to contact the ICFA Class Members through the above described methods even after the ICFA Class Members told Defendant to stop contacting them.

142. As described by Plaintiff, Defendant's unfair acts and omissions resulted in real injuries to the ICFA Class Members.

143. An award of punitive damages is appropriate as Defendant's unfair acts and omissions were outrageous, wanton and willful, and showed a conscious disregard and indifference for the rights of Plaintiff, and consumers generally.

144. The ICFA ATDS Class is defined as:

> All residents of the State of Illinois (the "IFCA ATDS Class Members") who were called on their cellular phones within the last three years by Defendant where Defendant placed the calls using an ATDS and Defendant never had the express prior consent of the IFCA ATDS Class Members before or after the calls were placed.

145. The ICFA Pre-Recorded Class is defined as:

> All residents of the State of Illinois (the "IFCA Pre-Recorded Message Class Members") who were called on their cellular phones within the last three years by Defendant where played or left pre-recorded messages and Defendant never had the express prior consent of the IFCA Pre-Recorded Message Class Members before or after the calls were placed.

24

146. The ICFA Text Message Class is defined as:

> All residents of the State of Illinois (the "IFCA Text Message Class Members") who received text messages on their cellular phones within the last three years by Defendant where sent the text messages using an ATDS and Defendant never had the express prior consent of the IFCA Text Message Class Members before or after the text messages were sent.

**WHEREFORE**, Plaintiff DONALD DOYLE, on behalf of the ICFA Class Members, respectfully requests that this Honorable Court:

a. Find that Defendant's unfair acts and omissions violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

b. Award the ICFA Class Members actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

c. Grant any other relief deemed appropriate and equitable.

## VII. Additional Class Action Allegations

147. Plaintiff can satisfy the elements of Federal Rule of Civil Procedure 23.

148. The time-periods set forth in each proposed class definition are intended to take extend four years prior to the filing date of this lawsuit (or the date on which Defendant has been served) for each proposed TCPA class action, and three years prior to the filing of this lawsuit (or the date on which Defendant has been served) for each proposed ICFA class action.

149. Plaintiff reserves the right to modify the above class definitions in response to any argument advanced by Defendant that may contend that one or more of the above classes constitute so-called "failsafe" classes.

150. The putative class members can be administratively ascertained from business records maintained by the Defendant. *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the Plaintiff's proposed class was ascertainable because the defendant

"possesse[d] all of the relevant bank records needed to identify the putative class members").

### A. Numerosity

151. Numerosity is satisfied because Defendant called at least forty (40) residents of Illinois in the same manner that Defendant called Plaintiff - through ATDS technology that is prohibited by the TCPA, including, pre-recorded messages and text messages – without their consent and after they told Defendant stop contacting them.

152. Joinder of all members of the Class is impracticable.

### B. Commonality and Predominance

153. The elements of is commonality and predominance are satisfied.

154. As to the TCPA based classes, commonality exists because Defendant acted in a common manner toward Plaintiff and the proposed class members by calling Plaintiff and the proposed class members in the same way: (a) through-automated dialing technology prohibited by the TCPA – either through an ATDS; and (b) without consent of the person called.

155. There are questions of law and fact common to the claims of Plaintiff and members of the proposed classes, including;

> a. whether the dialing systems used by the Defendant qualifies as an ATDS or a predictive dialer under the TCPA;
>
> b. whether Defendant violated the TCPA;
>
> c. whether Defendant sent text messages or used pre-recorded messages;
>
> d. whether Defendant can demonstrate consent; and
>
> e. whether the conduct described herein was intentional so as to warrant treble or punitive damages of up to $1,500 per call.

### C. Typicality

156.    Plaintiff's claims are typical of the claims of the proposed Class, as the calls that Defendant placed were the same or substantially similar to those received by the proposed class members.

157.    As discussed directly above, Plaintiff and the proposed class members' claims all arise from the same operative facts and are based on the same legal causes of action.

158.    Plaintiff and each of the proposed class members are all subject to the same illegal calling techniques employed by Defendant.

### D. Appropriateness and Superiority

159.    A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

160.    The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

161.    The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

162.    As such, the expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually.

### E. Plaintiff is Adequate

163.    Plaintiff and proposed class counsel will fairly, adequately and vigorously represent and protect the interests of the proposed class members and has/have no interest antagonistic to those of the putative classes.

164.    There are no defenses unique to Plaintiff.

165.   Defendant is not aware of any circumstances that would render Plaintiff unqualified to serve as a class representative in this case.

**F. Proposed Class Counsel is an Experienced Class Action Litigator**

166.   Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator. On May 15, 2018, Mr. Vlahakis was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99).

167.   Mr. Vlahakis has defended over a hundred consumer-based claims since 1998, and has litigated well over forty TCPA based putative class actions.  For example:

  a.  In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of TCPA class actions.  *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapies, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

  b.  Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of FDCPA class action settlements;

  c.  Mr. Vlahakis understands the types of defenses defendants typically raise in TCPA class actions.  For example, in his former role as  defense attorney:

    i.   Mr. Vlahakis defeated a putative plaintiff's attempt to certify a TCPA class action in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013); and

    ii.  in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012), Mr. Vlahakis has caused a previously certified TCPA class action to be decertified based upon proving up an individualized issue which militated against commonality and typicality;

  d.  In litigating TCPA class actions, Mr. Vlahakis has ascertained the identities of putative class members individually and in conjunction with industry experts;

      e.   Mr. Vlahakis has also filed and argued petitions for declaratory relief before the FCC;

      f.   Mr. Vlahakis has never had a state attorney general or U.S. Attorney General for any district object to a case where Mr. Vlahakis and class counsel have jointly petitioned a district court for certification; and

      g.   Lastly, Mr. Vlahakis has experience utilizing third-party class notice providers to issue notice and payments to class members.

168.   Defendant is not aware of any circumstances that would render Mr. Vlahakis unqualified to be class counsel in this case.

**Plaintiff demands trial by jury.**

8/19/2019

Respectfully Submitted,

/s/ James  C. Vlahakis
James C. Vlahakis
Senior Counsel
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
(630) 581-5456
jvlahakis@sulaimanlaw.com